Jacqueline **BOEDEKER**, Plaintiff,

v.

**AUDREY OIL COMPANY, DIVISION OF FLASH OIL CORPORATION, d/b/a Site Oil Company,** Defendant.

**No. 76–1178C(3).**

United States District Court,
E. D. Missouri, E. D.

Feb. 23, 1979.

---

Charles J. McMullin, St. Louis, Mo., for plaintiff.

Pat L. Simons, Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Jacqueline Boedeker brought this suit pursuant to 42 U.S.C. § 2000e et seq., alleging discrimination on account of sex.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1) Plaintiff Jacqueline Boedeker is a female resident of the state of Missouri and a citizen of the United States. Defendant Audrey Oil Company is a division of Flash Oil Corporation which employed plaintiff at all times relevant to this proceeding.

2) Plaintiff was employed by defendant as a service station attendant from March 10, 1974 through May 19, 1974 in Denver, Colorado. Plaintiff was again employed by defendant, in St. Louis, Missouri, from September 19, 1974 to February 4, 1975. The parties have stipulated that plaintiff was terminated from this employment on February 3, 1975. It is this termination which gives rise to the claim herein.

3) When plaintiff was hired in September, 1974, the service station at which she worked had six employees; one other employee was female but was terminated shortly after plaintiff began her employment.

4) Plaintiff was originally assigned to the day shift, and was paid $2.00 per hour. Within a few days of her hire, plaintiff requested a transfer to the midnight shift, 11:00 p. m. to 7:00 a. m. because of the increased pay and the increased flexibility the hours would afford to plaintiff. This transfer was approved and plaintiff received $550.00 per month, or $2.44 per hour.

5) Plaintiff began to receive obscene telephone calls on the midnight shift. Since she worked this shift alone, she became apprehensive and requested a transfer back to the day shift. This was approved. Her rate of pay remained the same.

6) On January 21, 1975, Ron Tedford, defendant's area supervisor, discharged Jim Caswell, the manager of the station at which plaintiff was employed. Robert Gipson was then promoted from assistant manager to manager. Plaintiff was requested

to return to the midnight shift by Tedford, because of her prior experience on that shift, until Gipson could hire and train new help for that shift. Plaintiff agreed to do so but shortly thereafter requested that she again be transferred back to the day shift.

7) During the course of her employment with defendant, plaintiff held a second job at Sears, Roebuck and Company. Although she was able to work her hours at Sears around her job with defendant, she was required to inform Sears, on a weekly basis, of the hours that she would be able to work. When transferred back to the midnight shift, on a temporary basis until Gipson was able to find a replacement, plaintiff was unable to inform Sears on a weekly basis of the hours that she would be able to work, since plaintiff had no idea when she would be changing shifts. As a result, plaintiff terminated her employment at Sears.

8) Plaintiff was discharged by Gipson on February 3, 1975. Gipson told plaintiff that the reason for her discharge was cash shortages at the end of shifts. The service letter which plaintiff received on December 9, 1976, however, stated that the reason for discharge was "tardiness, inflexibility of hours that could be worked because of other employment, and refusal to attend to cleaning duties". In a statement given to the Equal Employment Opportunity Commission, Gipson listed as the reasons for the discharge plaintiff's failure to follow company policy with respect to the cleanliness of the station, her inflexibility of working hours because of a second job, and the fact that "if there were no customers, she would be reading a book". In an affidavit, Ron Tedford stated that the reasons for plaintiff's dismissal were laziness, unwillingness to serve customers in accordance with defendant's policy, tardiness, and a problem with cash control. In a statement given to the Equal Employment Opportunity Commission, Tedford refers to plaintiff's problems with cash shortages and tardiness.

9) The evidence adduced at trial establishes that plaintiff experienced no more cash shortages than normal. Other employees, having equal or increased cash shortages, were not terminated. The evidence also failed to support the discharge on the basis of tardiness. The meager evidence adduced on this point was not sufficient to convince this Court that tardiness played a role in the decision to terminate plaintiff. Moreover, the evidence fails to establish that plaintiff's second job at Sears caused an inflexibility of working hours which necessitated her discharge. To the contrary, the evidence showed that plaintiff viewed her employment with defendant as her primary employment and made sure that her job at Sears did not interfere. When it was no longer possible to schedule the two jobs, plaintiff terminated her employment with Sears. When plaintiff was transferred to the midnight shift upon Gipson's promotion to manager, she was told that the transfer would be temporary. The Court can not find from the evidence that plaintiff's desire to return to the day shift reflected an inflexibility of hours. She was requested to transfer to that shift because the service station was short-handed. Although, as a female working alone during such hours, she had previously encountered problems, plaintiff agreed to accept the transfer. Such action does not reflect an inflexibility of working hours. The evidence did establish that plaintiff read books while on duty. The evidence fails to establish, however, that such actions warranted discharge. Plaintiff was observed reading books on the midnight shift, a time which could not have been overrun with customers. Although there were cleaning duties which the employees were required to fulfill when not waiting on customers, the Court has reviewed the same and finds that the duties were not so extensive as to occupy all free time during the shift.

10) After reviewing the record herein, the Court finds that plaintiff's sex played a role in the decision to discharge her. Defendant's employment statistics, although not determinative, reflect a low proportion of women employed as service station attendants when compared to the female population as a whole. Moreover, there was evidence in the record that vari-

718

ous supervisory personnel did not want to hire female attendants. The reasons given for plaintiff's discharge were pretextual. Accordingly, the Court finds that plaintiff's discharge was the result of discrimination on account of sex.

■ 11) The Court finds that plaintiff suffered lost wages and interest in the total amount of $4,488.15.

■ 12) Plaintiff's attorney has filed an affidavit in which he states that he has expended 239.75 hours in the preparation and trial of this cause. He has further represented to this Court that he believes $50.00 per hour to be a reasonable attorney's fee. This Court finds the sum of $3000.00 to be a reasonable attorney's fee herein.

CONCLUSIONS OF LAW

This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 42 U.S.C. § 2000e *et seq.*

Since this Court has found that plaintiff's discharge was the result of discrimination on account of sex, defendant has violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a). *Cf., Saracini v. Missouri Pacific Railroad Company*, 431 F.Supp. 389 (E.D.Ark.1977).

In determining the amount of attorney's fees to be awarded, this Court has considered the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors are: time and labor required; novelty and difficulty of the questions; skill required to perform the legal service properly; time limitations imposed by the client or circumstances; the amount involved and the results obtained; the experience, reputation and ability of the attorney; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. The cause herein did not present any complex legal issues; the issues were solely factual. Defendant did not engage in extensive discovery, limiting itself to a set of interrogatories and one deposition. Although the cause was lengthened

somewhat by defendant's change of counsel, the Court can not conclude that an expenditure of over 200 hours was warranted herein.

Judgment will be entered in plaintiff's favor.